Djon Pjetri et al., Respondents, v New York City Health and Hospitals Corporation, Appellant.

First Department, June 20, 1991

**APPEARANCES OF COUNSEL**

*Steven J. Ahmuty, Jr.,* of counsel *(Bower & Gardner,* and *Victor A. Kovner, Corporation Counsel,* attorneys), for appellant.

*Martin S. Rothman* of counsel *(Joseph Irom* and *Alyne I. Diamond* with him on the brief; *Irom & Wittels, P. C.,* attorneys), for respondents.

**OPINION OF THE COURT**

MURPHY, P. J.

Djon Pjetri, a 24-year-old man otherwise in good health, was admitted to North Central Bronx Hospital for the repair of a fractured leg. He left the hospital with profound brain damage, his intellectual capacity reduced to that of a young child. During the operation to set his broken bones an endotracheal tube had been misplaced causing the oxygen flow to his brain

to become seriously diminished. Deprived in this manner of sufficient oxygen, Mr. Pjetri sustained devastating and permanent neurological injuries.

In the medical malpractice action subsequently commenced by Mr. Pjetri and his wife Zoja against the New York City Health and Hospitals Corporation, negligence was conceded, leaving only the issue of damages for the jury's determination. In May 1987, the jury returned a verdict for the Pjetris, awarding Djon Pjetri a total of $24,517,517—$20,000,000 of which was for pain and suffering—and Zoja Pjetri $3,000,000 on her derivative claim. The amount of the verdict was eventually reduced in the context of posttrial motion practice; Djon Pjetri stipulated to a reduction in his pain and suffering award to $2,500,000 and Zoja Pjetri stipulated to a reduction in her award to $1,000,000, which amount was subsequently modified upward by the trial court to $1,500,000. The final judgment was entered on March 28, 1988. Pursuant to that judgment, Djon Pjetri was to recover a total of $7,017,578 plus interest in the amount of $554,388.66, and Zoja Pjetri was to recover $1,500,000 plus interest in the amount of $118,500. As ought to have been clear from the face of the judgment the interest component of the award, which came to the considerable sum of $672,886.66, was accurately computed at a rate of 9% per annum.

By notice of appeal dated April 4, 1988, the Health and Hospitals Corporation appealed "from each and every part of said Judgment * * * as well as the whole thereof." This court, however, unanimously affirmed the judgment in May of 1989. Two motions by the Health and Hospitals Corporation for leave to appeal to the Court of Appeals followed. The first of these was denied by this court in August 1989 and the second, addressed to the Court of Appeals, was denied by that court in November 1989.

It was at this juncture, some 20 months after the judgment had been entered and after the appellate process had run its course, that counsel for the Health and Hospitals Corporation first discovered that the judgment assessed interest on the verdict at a rate of 9% per annum. Counsel was of the view that the proper rate was 3% since subdivision (5) of section 7401 of McKinney's Unconsolidated Laws of NY (New York City Health and Hospitals Corporation Act § 20 [5] [L 1969, ch 1016, § 1, as amended]) provided that "the rate of interest to be paid by the corporation upon any judgment or accrued

claim against the corporation shall not exceed three per centum per annum."

Some six months after the discovery of this alleged error, the Health and Hospitals Corporation moved to amend the still unsatisfied judgment, inviting the trial court to exercise its "broad statutory and inherent power" to correct what counsel characterized as an error in computation. In a well-reasoned decision the trial court declined this invitation (147 Misc 2d 636). The court first expressed the view that CPLR 5004, providing for a uniform 9% rate of interest, had super-seded the earlier enacted statute upon which the Health and Hospitals Corporation relied. The court then went on to state that, even if the wrong rate had been applied, the question of which rate was applicable was a question of law which should have been raised by motion when the judgment was first entered or on the appeal from the judgment. The issue not having been raised at the appropriate time, its consideration was precluded.

The Health and Hospitals Corporation has now appealed the denial of its motion to amend the judgment. In its appel-late presentation it reiterates its contention that an error of a computational sort was made and that it was within the power of the trial court to correct such an error, even after the judgment said to contain the error had been affirmed on appeal and the appellate process exhausted.

■ It is, of course, true that a court possesses statutory *(see,* CPLR 5015) and inherent *(see, Ladd v Stevenson,* 112 NY 325) power to grant relief from a judgment. The power, however, is not plenary *(Matter of McKenna v County of Nassau,* 61 NY2d 739; 5 Weinstein-Korn-Miller, NY Civ Prac ¶ 5015.12) and is not appropriately exercised when the relief sought might have been obtained through appeal but was never requested of the reviewing court *(see, Matter of McKenna v County of Nassau, supra).* There can be no dispute that postjudgment motion practice cannot be permitted to displace and undermine the accepted process by which judgments are reviewed on appeal. The utility of judgments as final determinations of the rights and obligations of the parties would be fatally impaired were a court's discretion to grant relief from a judgment not carefully limited. Accordingly, once the appellate process has been concluded, alleged errors of law which could have been reviewed but were not, may not be addressed except insofar as the grounds for relief set forth in CPLR 5015 are present, or there has been some other compelling circumstance justifying

a court's resort to its inherent power. This, in any case, was the clear holding of the Court of Appeals in *McKenna (supra)* where, as here, an error was alleged in the applicable rate of interest. The court stated: "The errors alleged * * * on the motion to vacate the prior judgment do not constitute grounds for relief under CPLR 5015. Special Term abused its discretion in reopening its judgment to correct a perceived error of law that could have been raised on the prior appeals to the Appellate Division and to this court. A court's inherent power to exercise control over its judgment is not plenary, and should be resorted to only to relieve a party 'from judgments taken through [fraud,] "mistake, inadvertence, surprise or excusable neglect" ' *(Ladd v Stevenson,* 112 NY 325, 332)" *(Matter of McKenna v County of Nassau, supra,* at 741-742).

■ Implicitly conceding what is in any case obvious—that an issue of law which could have been reviewed on an appeal from a judgment may not be litigated once the appeals process is at an end, and that none of the circumstances set forth in CPLR 5015 which might warrant an exception to this fundamental rule are present—the Health and Hospitals Corporation urges that the supposed error was a "clerical" or "computational" error not affecting a substantial right, which it was within the trial court's power to correct pursuant to CPLR 5019 (a). The claim, however, constitutes a rather blatant mischaracterization of the alleged error. Indeed, there was no miscomputation by the court clerk; as noted, the interest was accurately computed by the clerk at a rate of 9%, the rate which the clerk, relying on CPLR 5004, thought applicable. Rather, the error, if any, was in the determination embedded in the judgment that the rate set forth in CPLR 5004 was the rate to which the plaintiffs were entitled.

The right to recover interest upon a judgment at a particular statutory rate, as opposed to a bare claim of entitlement to benefit from the perpetuation of clear arithmetic error, is undoubtedly a substantial right. Thus, once a judgment entitles a litigant to recover interest at a particular rate any litigation directed at modifying the judgment to alter that rate must be viewed as affecting a substantial right. Such litigation then, cannot be accommodated within the permission of CPLR 5019 (a).

If there were any doubt in this regard, it ought to be dispelled by the determination of the Court of Appeals in *Matter of City of New York (Washington St. Urban Renewal Project—Roteeco Corp.)* (33 NY2d 970). There, the Roteeco

Corporation, a claimant in condemnation proceedings, was awarded interest in a partial final decree of a rate of 4%. No appeal was taken. Some two years subsequent to the partial final decree, however, the Court of Appeals in a different matter *(Matter of City of New York [Manhattan Civic Center Area],* 27 NY2d 518) held that the proper rate of interest for the period covered by the *Roteeco* decree was 6%. Roteeco then moved pursuant to CPLR 5019 (a) to amend the decree to increase the rate of interest on the fee award made in the decree by two percentage points. In affirming the denial of the motion the Court of Appeals held, "Both partial decrees, from which claimants took no appeal, became final and the trial court had no jurisdiction to alter its decree in any matter of substance" *(Matter of City of New York [Washington St. Urban Renewal Project—Roteeco Corp.],* supra, at 972). Underscoring the fact that it considered the proposed amendment of the interest rate to concern a matter of substance, the *Roteeco* court cited to *Herpe v Herpe* (225 NY 323, 327) where the following particularly relevant passage may be found: "The rule has long been settled and inflexibly applied that the trial court has no revisory or appellate jurisdiction to correct by amendment error in substance affecting the judgment. It cannot, by amendment, change the judgment in matter of substance for error committed on the trial or in the decision, or limit the legal effect of it to meet some supposed equity subsequently called to its attention or subsequently arising. It cannot correct judicial errors either of commission or omission. Those errors are, under our system of procedure, to be corrected either by the vacating of the judgment or by an appeal."

█ In view of the aforecited authorities it should be absolutely clear that the trial court was entirely correct in concluding that it was without jurisdiction to amend the judgment. The trial court's order denying the motion to amend should, therefore, be affirmed on jurisdictional grounds, leaving for another day the legal issue so belatedly raised by the Health and Hospitals Corporation respecting which statute governs the rate of interest it must pay upon a judgment.

The dissent, however, in exclusive reliance upon the Court of Claims' decision in *Fehlhaber Corp. v State of New York* (64 Misc 2d 167, *affd on other grounds* 40 AD2d 881), has summarily concluded that the present matter involves nothing more than a clerical error.

The question in *Fehlhaber (supra)* was whether the trial

court possessed the authority to amend that part of its judgment which had awarded the claimant interest upon bonds held by the State as security for the claimant's performance of a construction contract. In addressing this question, the court began by recognizing "that at least insofar as CPLR 5019 (subd. [a]) is concerned, [the court was] without authority to change an award of interest per se (as distinguished from mathematical computation as to its amount) in a *decision* on the ground of clerical error where it was *intended* that such an award of interest be made" *(supra,* at 175; emphasis in original). The court continued by observing that its error in awarding interest had been inadvertent. Indeed, it stated that it "never intended to award interest on anything but the cash sum yet due and owing and only a mere oversight on the part of the court permitted the insertion of the $369,159.88 figure" *(supra,* at 176). It was then in light of the fact that the error had not been intended, that the court came to the conclusion that the error was of a "clerical" sort and, therefore, within its power to correct both pursuant to CPLR 5019 (a) and as an exercise of its inherent authority. "Without question", stated the court, "the correction of an inadvertent error in the interests of justice is a proper exercise of the court's inherent power" *(supra,* at 177).

In marked contrast to *Fehlhaber (supra),* the matter at bar presents a situation in which the error, if any, was indisputably in accord with the trial court's intention. As the court made clear in the decision we now review, the March 28, 1988 judgment accurately reflected its view that the legally applicable rate of interest was 9%, and, as is manifest, the interest was accurately computed at that rate. This, in short, is precisely the sort of case in which a close reading of *Fehlhaber* would seem to indicate that there can be no viable claim of clerical error, for it bears repetition that the *Fehlhaber* court began its analysis from the proposition that it would have been without authority to amend the judgment respecting the award of interest on the ground of clerical error had the award been intended *(see, Fehlhaber Corp. v State of New York, supra).*

To the extent, however, that *Fehlhaber (supra)* may be read as supportive of the notion that a trial court may amend a judgment, either pursuant to CPLR 5019 (a) or its inherent power, to effect a change of substance, it is clearly not in accord with the well-settled law of this State *(see, Matter of City of New York [Washington St. Urban Renewal Project— Roteeco Corp.], supra,* at 972, and the cases cited therein).

Indeed, the *Fehlhaber* court's focus upon its subjective intent, would seem to have been misdirected. Undoubtedly, there is a degree of inadvertence in most, if not all, legal errors. That does not, however, transform such errors into mere clerical lapses correctible pursuant to CPLR 5019 (a) or the court's inherent power. Regardless of whether the error reflects the court's intention, if it is one of law affecting the substance of the judgment, the place for its correction is on appeal. If, as in *Roteeco (supra)* no appeal has been taken or, as in *McKenna (supra)* the appellate process has run its course, the judgment becomes final and but for the subsequent discovery of circumstances such as those enumerated in CPLR 5015 (a) fundamentally impairing the integrity of the judgment, the judgment will remain binding on the parties and immune from attack in collateral proceedings.

The dissent's willingness to compromise this absolutely basic principle, so essential to the maintenance of an orderly, efficient and economical adjudicative process, by unaccountably resolving what is indisputably a question of law as if it were a mere clerical error, is, at the very least, remarkably short-sighted. While it is by no means clear that the matter which the dissent has so summarily characterized as "clerical" for the rather transparent purpose of conjuring a jurisdictional basis for the result it thinks substantively appropriate, would in fact be resolved in the defendant's favor if it were properly considered as an issue of law, it may be assumed for present purposes that it would and that had the issue been timely raised on the appeal from the judgment its proper resolution would have resulted in a substantial savings to the defendant. This, however, does not constitute a basis to open the judgment. The finality of a judgment is not impaired by a party's failure to raise an issue, which it would have, on appeal, no matter how costly that failure may be in an individual case. Indeed, it is precisely because the public cost of permitting the reopening of issues concluded in a judgment would, in the long run, be prohibitive that the finality of judgments is so closely guarded. The record before us contains numerous examples of judgments against the Health and Hospitals Corporation dating back to 1985 in which interest on the judgment was computed without objection at a rate of 9%. Doubtless there are many more such cases. Were we to rule in accordance with the appellant's wishes in this case, the courts and the parties to these other judgments would predict-

ably be burdened with the litigation of motions to reopen adjudications once thought final and the recovering plaintiffs would be consigned indefinitely to a state of uncertainty as to whether they were really entitled to the sums awarded. Nor, despite its obvious interest in seeing the present judgment opened would such an outcome ultimately be a source of comfort for the city. For as *Roteeco (supra)* so aptly demonstrates, the city, too, has an abiding interest in maintaining the finality of judgments, and specifically those parts of the judgment reflecting the applicable rate of interest. There are doubtless many who, if provided the opportunity with the sort of ruling the city now seeks, would claim that "clerical" errors were made in the city's favor, and that the affected judgments, although longstanding and "final" should now be "corrected" so as to augment the city's liability by assessing interest against it at a higher rate.

Perhaps sensitive to these difficulties, Justice Kupferman in the spirit of compromise has suggested that the award of prejudgment interest be considered "final", but that the award of postjudgment interest be assessed at the lower, allegedly correct rate. Of course, there is no basis in law or logic for such a compromise. If the alleged error was truly clerical, it should simply be corrected; there would be no reason to correct only part of the error. If, however, as seems obvious, the claimed error was one of law, the question is not whether there exists a basis to open the judgment just a little bit, but whether the judgment may be opened at all. As ought to be manifest, there is no basis to open this judgment, nor is one even alleged. Although claiming to seek no more than permission for a recomputation, the defendant would, in reality, be satisfied with no less than an entirely unwarranted collateral attack upon a final judgment more than three years after its entry. As this would be fundamentally subversive of the finality of judgments and the integrity of the adjudicative process, it cannot be allowed.

Accordingly, the order of the Supreme Court, Bronx County (Harold Tompkins, J.), entered July 9, 1990, which denied the defendant's motion to modify the judgment entered against it, should be affirmed, without costs.

KUPFERMAN, J. (dissenting in part and concurring in part). In this medical malpractice action, in which negligence was conceded, a judgment was obtained in the principal amount of $7,000,000 for the injured plaintiff, who had suffered profound

brain damage due to oxygen deprivation during the course of an operation, and $1,500,000 in favor of his wife on her derivative claim.

Incidentally, the jury award was $24,500,000 and $3,000,000, respectively, which was reduced to $7,000,000 and $1,500,000 pursuant to stipulation.

At issue is the question of interest, judgment having been entered and interest added at a rate of 9% pursuant to CPLR 5004 on March 28, 1988.

The defendant, New York City Health and Hospitals Corporation (HHC), appealed and this court affirmed the judgment and underlying orders, without opinion (150 AD2d 995). The Court of Appeals denied leave to appeal (74 NY2d 615).

When the matter became "final", counsel for defendant HHC attempted to compute the interest for the period between March of 1988 and the final resolution of the appellate process in November of 1989. It was then discovered, for the first time, that the County Clerk had erroneously computed prejudgment interest at 9% instead of the statutory rate of 3% covering the New York City Health and Hospitals Corporation, as prescribed by section 7401 (5) of McKinney's Unconsolidated Laws of NY (New York City Health and Hospitals Corporation Act § 20 [5] [L 1969, ch 1016, § 1, as amended]). Of course, the amount involved is substantial. Prejudgment interest at 9% is approximately $670,000, while at 3% it is some $220,000, for a difference of approximately $450,000. Postjudgment, the difference is approximately $1,300,000. As to the latter, a judgment has not yet been entered.

The 9% rate was established by a 1982 amendment to General Municipal Law § 3-a as the highest rate allowable against a municipal corporation; whereas, the 3% rate in title 18, chapter 5 of the Unconsolidated Laws predates it and applies specifically to HHC.

HHC contends that correction of mistakes is permitted pursuant to CPLR 2001 and 5015 (a). The plaintiff postulates that inasmuch as the defendant-appellant's notice of appeal was from "each and every part" of the judgment, that the matter has been adjudicated and is no longer open to correction. The IAS court accepted the latter contention, indicating that HHC only sought review of the applicable interest rate after completion of the appellate process. (147 Misc 2d 636, 640.)

However, since the rate of interest was not specified in the

judgment and there were no counterorders submitted with different interest rates, it cannot realistically be stated that HHC "waived" its right to contest a substantial interest overpayment. The clerical error is excusable in the interest of justice. *(See, Fehlhaber Corp. v State of New York,* 64 Misc 2d 167, 175-177, *affd on other grounds* 40 AD2d 881.)

I believe there is a distinction between prejudgment and postjudgment interest. The prejudgment interest was part of the judgment which was affirmed and, accordingly, should not be disturbed. The postjudgment interest has not yet been computed and we are free to apply the correct rate of 3% and I would, therefore, so modify to direct the Bronx County Clerk to enter judgment at that rate.

CARRO, ASCH and KASSAL, JJ., concur with MURPHY, P. J.; KUPFERMAN, J., dissents in part and concurs in part in a separate opinion.

Order, Supreme Court, Bronx County, entered on or about July 9, 1990, affirmed, without costs.