OPINION OF THE COURT
George D. Salerno, J.
Notwithstanding the recent decision rendered by the Appellate Division which disposed of the appeal pursued by Lane & Sons Construction Corp. whereby the Appellate Division modified the judgment of the Supreme Court entered on May 4, 2005 (upon a jury verdict awarding plaintiff, inter alia, $5 million for past pain and suffering, $10 million for future pain and suffering over 35 years and $8,295,000 for future medical expenses) by reducing the award for future medical expenses to $8,056,222 (Miraglia v H & L Holding Corp., 36 AD3d 456 [2007]), and plaintiff’s agreement, incorporated in a written stipulation, consenting to reduce the award for future pain and suffering to $5,000,000, Lane moves pursuant to CPLR 5019 (a) to amend the judgment entered on May 4, 2005 by providing for the entry of the judgment only against defendant H&L Holding Corporation. In addition, counsel representing Lane, who handled the appeal on behalf of Lane, the employer of the injured plaintiff, seeks other forms of ancillary relief such as vacating that portion of the May 4, 2005 judgment which provided for recovery against Lane and directing the entry of a counter amended judgment in the form annexed to Lane’s moving papers.
Plaintiff opposes Lane’s motion and cross-moves for an order of attachment directing the turnover of all sums received by the owner of the premises where the accident occurred to plaintiff and in the alternative imposing a constructive trust on proceeds paid to H&L by its carrier arising from coverage provided by H&L’s insurance carrier, which, as a matter of law, plaintiff contends is required by the judgment entered on May 4, 2005.
By separate cross motion, H&L also moves to amend the May 4, 2005 judgment to provide judgment over against Lane for the amount of the judgment dated May 4, 2005 and to provide in the proposed amended judgment a decretal paragraph which directs payment by Lane to H&L for defense costs incurred by H&L in defending the action brought by plaintiff. H&L also joins with plaintiff opposing Lane’s motion.
*854 Plaintiff brought this action to recover damages for personal injuries he sustained while engaged in construction of residential homes located on a parcel of property situated near the New England Thruway. During this construction activity, plaintiff was employed by Lane. Plaintiff thereafter instituted a personal injury action against H&L alleging that H&L, the owner of the site where the accident took place, violated Labor Law §§ 200, 240 (1) and § 241 (6). H&L then commenced a third-party action against Lane, asserting that Lane was the contractor engaged to construct, supervise and manage the building of residential homes at the property situated near the New England Thruway, for indemnification or contribution premised on the affirmative negligence of Lane, and that, in the event Lane is held liable as the responsible party for the loss and damage sustained by plaintiff, Lane shall indemnify H&L for the full amount of any judgment entered against H&L.
Prior to the commencement of the trial, counsel for all parties appeared before this court in connection with H&L’s application in the form of a motion in limine directing Lane to indemnify H&L pursuant to its contractual agreement with Lane and also pursuant to the principles of common-law indemnity. The contract between Lane and H&L clearly provided that Lane agreed to indemnify H&L against claims, damages and expenses including attorneys’ fees attributable to or caused by the negligent conduct of Lane.
Apart from the morass of arguments and contentions raised by the parties by their respective motions, it is evident that H&L’s liability is statutorily imposed by virtue of H&L’s ownership of the site where the accident occurred. Case law interpreting the application of Labor Law § 240 (1) and § 241 (6) imposes liability against property owners where an employee of the contractor retained to perform construction is injured.
“Section 240 (1) of the Labor Law, like section 241 (6), provides that the statutory duty is nondelegable. It does not require that the owner exercise supervision or control over the worksite before liability attaches (Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d, at 501-502, supra). Although sections 240 and 241 had been construed before the 1969 amendment as requiring that an owner or general contractor actually exercise control or supervision before either could be held responsible, when the Legislature amended the Labor Law, as we noted in *855 Haimes (supra), it referred to both sections and stated its purpose in redrafting them was to fix ‘ “ultimate responsibility for safety practices . . . where such responsibility actually belongs, on the owner and general contractor” (NY Legis Ann, 1969, p 407)’ (Haimes v New York Tel. Co., 46 NY2d, at 136, supra). Thus, the reasoning adopted in Celestine is controlling here. Liability rests upon the fact of ownership and whether Eastern had contracted for the work or benefitted from it are legally irrelevant.” (Gordon v Eastern Ry. Supply, 82 NY2d 555, 560 [1993].)
The evidence presented by plaintiff at the trial relating to the accident which caused plaintiff to sustain catastrophic injuries was not only dramatic but largely undisputed, and centered on plaintiffs employer Lane’s failure to provide adequate safeguards at the job site. A brief review of such circumstances which led to a $86 million verdict will not be repeated here in detail. Nevertheless, the huge sum awarded by the jury reflected the jury’s view of Lane’s negligent conduct. Quoting in part from the opinion of the Appellate Division regarding Lane’s appeal, Lane’s president testified at the trial that workers such as plaintiff were “permitted to walk on planks across a trench at the worksite,” which caused plaintiff to fall into the trench and end up impaled on a steel bar “from the scrotum to L2 on his spinal cord.” Such testimony and all the evidence introduced at the trial related solely to Lane, and the chair that would have been occupied by H&L at the trial, as the owner, remained unoccupied by virtue of the stipulation entered into between Lane and H&L in which Lane agreed to assume representation of H&L.
The trial record reflects the absence of H&L from the trial which came about as a result of the agreement reached between H&L and Lane before the trial started. The intent of the parties is also made clear upon a review of the verdict sheet. The problem which arose here is caused by the inability of the main defendant, H&L, to pay any significant portion of the judgment since it has limited assets and its liability coverage is limited to $1 million. The judgment clearly directs liability against H&L and Lane. The subject decretal paragraphs provide in pertinent part: “ORDERED, ADJUDGED AND DECREED that plaintiff . . . . recover of defendant H&L HOLDING CORE . . . , and third-party defendant, LANE & SONS CONSTRUCTION CORE”
*856 According to the affidavit submitted by Louis Spizzirro (see exhibit A, H&L’s cross motion), the liability policy issued to H&L is limited to $1 million. Admittedly, plaintiff was unable to sue Lane directly as a tortfeasor since plaintiffs injuries arose in the course of his employment with Lane. Consequently, workers’ compensation constituted plaintiffs exclusive remedy (see Workers’ Compensation Law § 11).
Generally a successful plaintiff who obtains a verdict in a personal injury action against one or more main defendants can recover against any tortfeasor who is jointly and severally liable, irrespective of apportionment, the full amount of damages awarded by the jury. In cases where the jury has apportioned liability among two or more defendants and one defendant pays more than his proportionate share, that defendant may recover from the other defendant the amount paid in excess of his proportionate share. The problem which the parties have encountered in the case at bar is that Lane argues that the main defendant, H&L, is not entitled to recover against the third-party defendant Lane, until H&L pays its share of the judgment which currently makes H&L jointly liable with Lane. As previously noted in this opinion, no apportionment issue was presented to the jury.
Lane argues that the judgment (dated May 4, 2005) must be amended to delete so much of the judgment which made Lane directly liable to plaintiff and thereby obligated Lane to pay the award rendered by the jury. In sum, Lane relies upon Workers’ Compensation Law § 11, and the holding of the Court of Appeals in McCabe v Queensboro Farm Prods. (22 NY2d 204 [1968]) where the Court determined that impleading a third-party defendant did not vitiate the requirements of a showing of actual loss before there may be a recovery. Plaintiff in McCabe (supra) was injured at a construction site and sued the roofing contractor who in turn impleaded another roofing contractor as a third-party defendant alleging that the latter had participated in the job as a joint venturer with the main defendant, which resulted in a judgment in favor of plaintiff against the direct defendant. The supposition which Lane relies upon is that the obligation of the third-party defendant does not accrue unless and until the judgment is paid by the direct defendant.
H&L raises several arguments addressed to Lane’s motion and in support of its own cross motion to amend the judgment by inserting language in the judgment to the effect that H&L is entitled to a judgment over against Lane, who cannot challenge *857 that it agreed unconditionally to represent H&L before the trial began without reservation. H&L appeared by counsel immediately before jury selection commenced with Lane’s attorney and plaintiff’s attorney in connection with the amended third-party complaint which pleaded a cause of action for contractual indemnification. H&L moved this court to “direct judgment in its favor on claims for common law [and] contractual indemnification.”
Counsel representing H&L also argued that H&L is entitled to common-law indemnification since H&L had “nothing to do with control, supervision or direction of the work site and because we didn’t provide any materials for work or equipment.” H&L’s counsel also directed the court’s attention to the contract between itself and Lane which indemnified H&L for the claims asserted by plaintiff. The record will reflect the absence of opposition by Lane to H&L’s motion. As a result Lane, by virtue of its contractual agreement with H&L, took over the defense of the action on behalf of H&L. (Plaintiffs exhibit B submitted in support of his cross motion.) Consequently, Lane cannot assert a position which fashions liability against H&L.
H&L next argues that, notwithstanding Lane’s representation of its interests at the trial, Lane by its motion is asserting a position which adversely affects H&L by exposing H&L to a judgment which it cannot satisfy since H&L coverage is limited to $1 million and H&L has no assets to pay the judgment. The indemnification agreement relied upon by H&L provided in pertinent part:
“The contractor shall indemnify and hold harmless the owner . . . against claims, damages losses and expenses including but not limited to attorney’s fees, arising out of or resulting from the performance of the work, provided that such claim ... is attributable to bodily injury . . . caused in whole or in part by negligent acts or omissions of the contractor . . . .”
Thus, H&L argues that the contract requires Lane to indemnify and hold H&L, the owner, harmless regarding any claims attributable to injuries to Lane’s employees caused by Lane’s negligence.
In addition, H&L argues that amending the judgment as proposed by Lane is an attempt by Lane to avoid its obligation imposed by the indemnification clause in the contract which Lane entered into long before plaintiff was injured.
*858 Both H&L and Lane turn to CPLR 5019 as authority for their diverse motions to amend the judgment entered on May 4, 2005. H&L seeks to have the judgment amended to reflect that, pursuant to its contract with Lane, it is entitled to be indemnified for the damages awarded to plaintiff and since Lane was found negligent it is according to H&L as a matter of law entitled to common-law indemnification.
Lane admits that H&L has a clear right to contractual indemnification pursuant to this court’s January 29, 2004 order. Unquestionably, Lane’s true motive is exposed by its argument that “once H&L satisfies the Judgment in whole or in part, H&L, in turn is entitled to seek indemnity from Lane & Sons.” Lane gratuitously portrays H&L’s rights as nothing more than a fictitious remedy.
First of all,
“the right of indemnification springs conceptionally from principles of equity and finds its expression in contract, express or implied . . . . It is nothing short of simple fairness to recognize that [a] person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity.” (Morris v Snappy Car Rental, 84 NY2d 21, 28 [1994] [citations and internal quotation marks omitted].)
In reality the application of indemnification represents an equitable principle. The Court of Appeals in McDermott v City of New York (50 NY2d 211, 217 [1980]) stated “[t]o prevent unjust enrichment, courts have assumed the duty of placing the obligation where in equity it belongs.”
It is well settled that parties to a lawsuit may chart their own course at the trial (Stevenson v News Syndicate Co., 302 NY 81 [1950]) and consent by stipulation or by their conduct to the law to be applied (see e.g. Brady v Natty, 151 NY 258 [1896]), and in doing so stipulate away statutory or even constitutional rights (Matter of New York, Lackawanna & W. R.R. Co., 98 NY 447, 453 [1885]). Moreover, courts have favored and encouraged stipulations as a means of expediting or simplifying the resolution of disputes provided that such stipulations do not affront public policy (T. W. Oil v Consolidated Edison Co. of N.Y., 57 NY2d 574 [1982]). Nothing has occurred here which indicates that the agreement reached by H&L affronts public policy.
*859 Here the parties did chart their own course when Lane agreed to indemnify H&L in the event the jury found in favor of plaintiff and assumed full responsibility to defend the action brought by plaintiff. Once assuming the defense, Lane’s advocacy during the trial could not impair its indemnification agreement with H&L. As the trial — which Lane totally conducted — progressed, the evidence presented clearly identified Lane as the tortfeasor. During the trial, and in its conduct during settlement negotiations, Lane never considered or sought contribution from H&L.
Further, the judgment following Lane’s posttrial motion was drafted by plaintiffs attorney and served with notice of settlement upon counsel representing Lane and H&L. The decretal paragraphs provided for payment of various sums of money to plaintiff and the language of the judgment awarded liability against both H&L and Lane. Lane never objected to the judgment which in several paragraphs clearly and unequivocally provided that plaintiff recover against both H&L and Lane. This is memorialized by this court’s adding of the words “and there being no opposition hereto” in the subject judgment (at 7).
Lane relies upon CPLR 5019 (a) as authority to correct the judgment which Lane says improperly provided for recovery not only against H&L but also against Lane. Counsel representing Lane argues that Lane’s liability does not arise until defendant H&L has satisfied the judgment in whole or in part. There is no doubt that CPLR 5019 (a) allows the trial court to cure mistakes, defects or irregularities. However, Lane seems to have put aside the well settled rule that a trial court has no appellate jurisdiction to correct an error in substance affecting the judgment (Herpe v Herpe, 225 NY 323 [1919]).
Thus, whether this court has the authority to amend the judgment when measured against the totality of events that transpired depends in large part on whether granting the relief sought by Lane enlarges the scope of the judgment beyond that authorized by the verdict. There is no doubt that CPLR 5019 (a) permits the trial court to correct or cure defects not affecting a substantial right of a party. (See Woolfalk v New York City Hous. Auth., 36 AD3d 444 [1st Dept 2007].) Arithmetic miscalculations and ministerial errors in the judgment were corrected by the court in Bauman v Bauman (200 AD2d 380 [1st Dept 1994]). The changing of the *860 interest rate to be applied to a verdict was held to be ministerial where the correct interest rate was not contested in Kiker v Nassau County (85 NY2d 879 [1995]), where the court also made it clear that the rate of interest to be applied to a verdict can constitute a substantive right of a party if the rate of interest is litigated and determined by the court (citing Matter of City of New York [Roteeco Corp.], 33 NY2d 970 [1974]). Modifications of a judgment upon an accounting involving a dissolution of a law partnership were held to be substantive in Aurnou v Greenspan (182 AD2d 523 [1st Dept 1992]). It is apparent to this court that amending the judgment as requested by Lane does not present a ministerial act, but does affect the substantial right of plaintiff and consequently CPLR 5019 (a) cannot be applied to change the judgment as requested by Lane.
The Appellate Division, upon hearing the appeal filed by Lane, unanimously modified the judgment on the law only to reduce future medical expenses to $8,056,222, and vacate the award for future pain and suffering (unless plaintiff stipulated to the reduced amount of $5,000,000 — which he did). No issue was raised by Lane’s appeal that the original judgment, which provided for a recovery from both H&L and Lane, was improper based upon Lane’s present argument that plaintiff had no direct right of recovery against Lane (per Workers’ Compensation Law §11).
A trial court upon remittitur cannot deviate from the mandate of the higher court and correct what Lane considers a ministerial mistake by amending the judgment. The judgment entered by this court should conform strictly to the remittitur. (See Matter of Trager v Kampe, 16 AD3d 426 [2d Dept 2005].) It is readily apparent to this court, as poignantly observed in Pjetri v New York City Health & Hosps. Corp. (169 AD2d 100, 103 [1st Dept 1991]), “postjudgment motion practice cannot be permitted to displace and undermine the accepted process by which judgments are reviewed on appeal” and should not be used as a process to avoid a determination which afforded the parties a full and fair opportunity to resolve their dispute. Courts “emphasize the need for finality and an end to litigation.” (Aurnou v Greenspan, 182 AD2d 523 [1992].)
Accordingly, Lane’s motion is denied. Plaintiffs cross motion which sought relief pursuant to CPLR 6201 and a constructive *861 trust is denied. H&L’s cross motion which sought reimbursement for the costs and attorneys’ fees incurred from Lane, pursuant to its contractual agreement with Lane, is granted to the extent of directing H&L and Lane to appear for a hearing before this court on October 15, 2007.