Yvonne Y. v City of New York (2021 NY Slip Op 06468)





Yvonne Y. v City of New York


2021 NY Slip Op 06468


Decided on November 18, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 18, 2021

Before: Webber, J.P., Kern, González, Mendez, Shulman, JJ. 


Index No. 161066/14 Appeal No. 14638-14638A Case No. 2020-04747, 2020-04809 

[*1]Yvonne Y. et al., Plaintiffs-Respondents,
v
The City of New York, Defendant, The New York City Department of Education et al., Defendants-Appellants.


Georgia M. Pestana, Corporation Counsel, New York (Mackenzie Fillow of counsel), for appellants.
Gair, Gair, Conason, Rubinowitz, Bloom, Hershenhorn, Steigman & Mackauf, New York (Ben B. Rubinowitz of counsel), for respondents.



Judgment, Supreme Court, New York County (Alexander M. Tisch, J.), entered December 1, 2020, upon a jury verdict in plaintiff A. Y.'s (plaintiff) favor and, to the extent appealed from as limited by the briefs, awarding the principal sums of $29,585,000 million for past pain and suffering and $29,585,000 for future pain and suffering over 54 years, plus 9% interest, unanimously modified, on the facts, to vacate the awards for past and future pain and suffering, and remand for a new trial of those issues, unless plaintiff stipulates, within 30 days after entry of this order, to reduce the awards for past pain and suffering to $12,000,000 and for future pain and suffering to $17,000,000, and to entry of an amended judgment in accordance therewith, and otherwise affirmed, without costs. Appeal from order, same court and Justice, entered August 10, 2020, which, to the extent appealed from as limited by the briefs, denied defendants the New York City Department of Education, the Board of Education of the City of New York, and Anna Poole's (collectively, defendants) motion to set aside the jury's verdict as to damages and for a new trial of that issue, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.
Plaintiff, then 16 years old, suffered catastrophic physical injuries, with psychological and emotional sequelae, when he was set on fire during a chemistry demonstration at the New York City public high school he attended as a student. The physical injuries included, among other things, third-degree burns to 31% of plaintiff's body — mainly on his face, ears, neck, arms, and hands — as well as degloving injuries to his hands and a corneal abrasion to his right eye. The record shows that plaintiff never lost consciousness. Within the first 24 hours of his hospital admission immediately following the accident, 38 pounds of fluid were pumped into plaintiff's body in an attempt to provide adequate fluid replacement to his damaged tissue, and plaintiff was placed in an induced coma for three days.
After the induced coma was terminated, plaintiff's treatment consisted of a series of major operations to remove as much of his burned skin as possible and replace it with skin grafts. Cadaver grafts were initially used as a temporary measure before permanent skin grafts could be harvested from other parts of plaintiff's body. Plaintiff contracted a MRSA infection while in the hospital, causing loss of half of the cadaver skin grafts. The skin grafts also required thousands of staples in order to affix the new skin. Between the skin that was burned in the accident and harvested for grafting, approximately half of plaintiff's skin was removed.
The third-degree burns that plaintiff suffered also destroyed the nerves and sweat glands underneath his skin, causing him both to lose sensation in those areas and to be unable to regulate his own body temperature. Following his two-month hospital stay, plaintiff was required to wear compression [*2]garments, which caused him to overheat. Plaintiff's treating physician testified not only that these injuries were permanent and incurable, but that plaintiff will also suffer from "double or triple" the problems he ordinarily would have as he ages due to skin atrophy, i.e., the loss of elasticity and thickness of the skin. Options for future treatment included reconstructive surgery for plaintiff's ears — which, plaintiff said, were "completely burned off" — and plastic surgery to even out his skin tone and scarring.
As for his psychological and emotional suffering, plaintiff testified, in detail, about the sensations he experienced being on fire. Despite stopping, dropping, and rolling in a futile attempt to extinguish the fire, plaintiff said that he "felt trapped in [his] own body" and "completely helpless." He described it as "the worst pain [he had] ever felt in [his] entire life," and that "[n]ot a day passes by where [he does not] think about it." Plaintiff also attested to the unceasing, excruciating physical pain that he endured during his hospital stay, which was minimally alleviated, if at all, with pain medication.
Plaintiff also described the sense of losing himself that developed not only from having 31% of his skin burned away, but also from the affixation of cadaver grafts and the harvesting of another 19% of his own skin. He also recounted the horror and hopelessness he felt the first time that he saw his reflection in the hospital, and his father attested to, and recounted instances of, plaintiff's despair during his hospital admission. Plaintiff further described how, upon being released from the hospital, his confidence and self-esteem plummeted. Plaintiff, who is nearsighted, developed a coping mechanism of removing his glasses while in public so that he could not see others' reactions to his appearance.
Under the circumstances of this case, we find the jury's awards for past pain and suffering (5.5 years) and future pain and suffering (54 years) excessive only to the extent indicated (see Peat v Fordham Hill Owners Corp., 110 AD3d 643 [1st Dept 2013], lv denied 23 NY3d 903 [2014]).
The court did not improvidently exercise its discretion in imposing a 9% interest rate on the judgment. Defendants did not seek a lower interest rate, as authorized by General Municipal Law § 3-a, until they submitted a proposed counterjudgment and affidavits in support of the lower interest rate 48 days after plaintiff first noticed his judgment for settlement, and just one day before the court signed plaintiff's proposed judgment. Although the time limitations of Uniform Rules for Trial Courts (22 NYCRR) § 202.48 did not apply, since the court did not direct plaintiff to settle the judgment (see Funk v Barry, 89 NY2d 364 [1996]; Patrick M. Connors, Practice Commentaries, McKinney's Cons Laws of NY, CPLR C2220:3[B]), defendants nevertheless should have formally moved to compute interest on the verdict at a lower rate than 9% (cf. Matter of City [*3]of New York [Herskovits], 52 AD2d 878, 878 [2d Dept 1976]) before the judgment was entered (see Pjetri v New York City Health & Hosps. Corp., 169 AD2d 100 [1st Dept 1991]; compare Kiker v Nassau County, 85 NY2d 879, 881 [1995]). This way, plaintiff would have had the opportunity to submit proof to the contrary, and the court could have ordered a hearing if necessary (see Matter of City of New York [Brookfield Refrig. Corp. - Zoloto], 58 NY2d 532, 536 [1983] [noting that "a . . . hearing was held on the issue of interest . . . "]; see generally Denio v State of New York, 7 NY3d 159, 168-169 [2006]; Rodriguez v New York City Hous. Auth., 91 NY2d 76 [1997]; cf. Verizon N.Y., Inc. v Supervisor of Town of Hempstead, 189 AD3d 1658, 1658 [2d Dept 2020] [appeal and cross appeal from a judgment that, "after a hearing, . . . awarded the plaintiff . . . interest at the rate of only 5.76% annually"]). Given defendants' laches in seeking to avail themselves of a lower interest rate authorized by law, Supreme Court providently declined to depart from CPLR 5004's presumptive 9% interest rate.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: November 18, 2021